AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

**FILED**
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

15 NOV -6 PM 1:46

CLERK-ALBUQUERQUE

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>1998 Green Acura<br>California license plate 7HYP749<br>VIN # 19UYA2259WL011043 | )<br>)<br>)<br>)<br>)<br>)    Case No.   15MR 715 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

described in Attachment A

located in the _____ District of _____New Mexico_____ , there is now concealed *(identify the person or describe the property to be seized)*:

described in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | Possession with intent to distribute, and distribution, of controlled substances |
| 21 USC 846 | Conspiracy to possess and distribute controlled substances |

The application is based on these facts:

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Daniel J. Franklin, Task Force Officer, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **November 6, 2015**

_____
*Judge's signature*

City and state:  Albuquerque, New Mexico

Karen B. Molzen, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Task Force Officer Jason Franklin, Drug Enforcement Administration, United States Department of Justice, being duly sworn, depose and stated the following:

## INTRODUCTION

1. I make this Affidavit in support of an application for a search warrant on a 1998 Acura, bearing California license plate 7HYP749, and vehicle identification number (VIN) 19UYA2259WL011043, which is fully described in Attachment A.  There is probable cause to believe that the vehicle contains evidence of violations of Title 21, United States Code, Sections 841(a)(1), related to drug trafficking activities.  The evidence to be seized is more specifically described in Attachment B.

2. The statements contained in this Affidavit are based on my own personal knowledge, as well as the knowledge of other DEA Agents and Task Force Officers and state and local law enforcement officials.  Because this Affidavit is written for the limited purpose of setting forth probable cause for the requested search warrant, I have not included every fact known to me through this investigation.  I have set forth those facts I deem necessary to establish probable cause that evidence, fruits, or instrumentalities, of the drug offenses will be found in the vehicle to be searched.

## AFFIANT'S BACKGROUND AND QUALIFICATIONS

3. I am presently employed by the Albuquerque Police Department and assigned to the Drug Enforcement Administration (DEA), Albuquerque District Office, Group I, as a

1

Task Force Officer.  I have been Task Force Officer with DEA since April 20, 2012.

I have received specialized training in drug investigation matters including, but not limited to, drug interdiction, drug detection, money laundering techniques and schemes, drug identification, and asset identification and removal, from the City of Albuquerque Police Department.  In addition, I graduated from the Albuquerque Police Department Academy in 2003.  In total, I have received in excess of 500 hours of comprehensive formalized classroom instruction in those areas outlined above.   My past duties include investigations on felony crimes including, but not limited to, state and federal narcotics violations, aggravated battery, aggravated assault, kidnapping, homicide, criminal sexual penetration of minors and adults, and all related domestic violence situations.

4.  I have assisted in the execution of numerous warrants to search particular places or premises for controlled substances and/or related paraphernalia, indicia and other evidence of violations of federal narcotics statutes. As a result, I have encountered and become familiar with various tools, methods, trends, and paraphernalia and related articles utilized by traffickers in their efforts to import, conceal, manufacture and distribute controlled substances.  Central to all trafficking efforts, regardless of the drug, is the traffickers' effort to make a profit from those dealings or transactions, either for the purchase of additional substances or material gain.  I have been actively involved in multiple narcotics investigations and have talked with numerous confidential informants and law enforcement personnel with extensive experience in narcotic investigations involved in the trafficking of narcotics, and this has formed the basis of my opinion.

2

5.  Based on my training, experience, and participation in this and other drug trafficking investigations, I have learned that individuals engaged in the transportation, delivery and sale of controlled substances usually keep records of such transactions, such as pay records, weights of drug loads, dates and times of delivery, and other records related to their criminal enterprise.  These records are usually kept in cars and houses/apartments, and other convenient locations for ready reference.   Based on this training and experience, and the following observations and facts, I believe at this time that at the subject there is being concealed certain property which constitutes evidence of the violation of Title 21, United States Code 841.  Such property includes, but is not limited to: U.S. currency, drug transaction records, vouchers, log books, evidence of financial transactions relating to obtaining, transferring, secreting or spending large sums of money made from engaging in drug trafficking activities, bank account records, safety deposit box information, rental agreements for storage facilities, records of mail and answering services including pagers and cellular telephones, airline ticket receipts, vehicle rental receipts, credit card receipts, hotel receipts, records of both local and long distance telephone calls, telephone records and personal telephone and address books, records and items of personal property evidencing dominion and control of said property, to include photographs and audio/visual tapes.  In my experience, during investigations such as this, DEA investigators often seize drug records of this type from drug traffickers and associates.

## RELEVANT FACTS

3

6.  On September 29, 2015, James ROBINSON was arrested the Albuquerque Aviation
    Police Department for possession of a controlled substance, as well as an extraditable
    warrant out of Mississippi.   At the time of his arrest, ROBINSON was with one other
    person named Davyoun BATTLE.  The personal identifiers of ROBINSON and
    BATTLE were obtained by Officer Dana Baldwin.  Officer Baldwin was told by
    ROBINSON that he had purchased the Acura parked at the parking Structure from Shad
    SHAW and was stopping by the Airport to look at the vehicle.   Officer Baldwin advised
    that the vehicle had a parking fee of at least $650 to get the vehicle removed from the
    garage.  ROBINSON stated that SHAW recently purchased the Acura from Raul Gomez-
    Martinez and that the Officer Baldwin could call SHAW to confirm that he indeed did
    purchase the vehicle.

7.  TFO Novicki ran SHAW's name through a DEA database and learned that Shad SHAW
    is a "priority target" in Mississippi, which means SHAW is the target of a DEA
    investigation.  TFO Novicki contacted TFO R. Drace with the Gulfport, Mississippi DEA
    office, and TFO Drace advised that ROBINSON is affiliated with a drug trafficking
    organization (DTO) operating in Los Angeles, California and Gulfport, Mississippi.  TFO
    Drace advised that ROBINSON is known to associate with William WATSON, a multi-
    pound methamphetamine trafficker in the Los Angeles, California area.  TFO Drace
    advised that he and Special Agent (SA) Don Penny have been working a case involving
    ROBINSON and SHAW.

8.  On October 15, 2015, TFO Thomas Novicki and I debriefed ROBINSON while he was in

4

custody at the Metropolitan Detention Center (MDC) located in Albuquerque, New

Mexico 87151.    At approximately 9:30 am, we entered MDC and advised a corrections

officer that we wanted to talk with ROBINSON.  A corrections officer arranged for a

room and brought ROBINSON to the room. We advised ROBINSON that we were with

a local police department and were conducting follow up investigation in reference to the

incident for which ROBINSON was arrested.

9.  ROBINSON was very compliant and stated that on September 29, 2015, he was driving

through Albuquerque on his way to Mississippi when he decided to stop at the

Albuquerque International Airport to see a vehicle that was parked in the parking

structure.  ROBINSON said the car parked at the airport is owned by SHAW, who is a

friend of ROBINSON's.  ROBINSON stated that he was interested in buying the car

from SHAW but when he saw the car in person, he suddenly became disinterested in

buying it.

10. ROBINSON said that after he finished looking at the vehicle, he and his passenger,

BATTLE, proceeded to leave the parking structure when he was pulled over by an

Albuquerque Aviation Police officer.  ROBINSON advised that he was arrested for

having an outstanding warrant out of Harrison County, Mississippi.  ROBINSON stated

that his passenger, BATTLE, was concealing his identification and was also arrested.

ROBINSON stated that a small amount of methamphetamine was located inside the

vehicle he had been driving, and that he and BATTLE were also charged with the

possession of that substance.

5

11. I asked ROBINSON additional questions pertaining to the vehicle owned by SHAW, as this vehicle has been parked at the airport for nearly four months. ROBINSON said that SHAW was driving through New Mexico several months back and decided to park the car at the airport and fly back home. ROBINSON advised that he knew the vehicle had a large parking bill due to being parked for so long. He advised that he would have paid the parking bill if he decided to purchase the vehicle.

12. TFO Novicki asked ROBINSON if he knew a person named William WATSON. ROBINSON stated that WATSON is a pound quantity methamphetamine distributor living in the Los Angeles, California area. ROBINSON stated that he originally met WATSON while he was in jail in California. He stated that once he and WATSON were released from jail, they stated working together. ROBINSON said that he would sell the methamphetamine that he obtained from WATSON. Additionally, ROBINSON stated that persons from across the country would drive to WATSON's place in California to buy large quantities of methamphetamine.

13. Furthermore, ROBINSON stated that if we were able to get him out of jail he would be able to facilitate a large drug transaction or advise officers when WATSON had a large quantity of methamphetamine in his residence. Thereafter ROBINSON became evasive to additional questions and no longer wanted to talk.

14. On October 27, 2015, at approximately 5:30pm, TFO Novicki and I received a 20 second phone call from MDC. The phone call was from ROBINSON. ROBINSON stated that he wanted TFO Novicki and I to come to the jail and speak with him.

15. On November 2, 2015, at approximately 11:30 am, TFO Novicki and I went to MDC and advised the jail staff that we would like to speak with ROBINSON.  Arrangements were made for us to meet with ROBINSON.

16. Once ROBINSON arrived to meet with us, I asked, "What is going on? You called us." ROBINSON stated that he was "at [his] wits end," citing that nobody cares that he is in jail.  ROBINSON stated that nobody had tried to contact him or offered to put any money on his books.

17. ROBINSON continued by stating that during our last conversation that took place on October 15, 2015, we were "not too far off."  ROBINSON said that there were drugs in a particular location and that he would only advise of the location if TFO Novicki and I were not going to charge him.  We reassured ROBINSON that he was not going to be charged at this time.  ROBINSON stated that there were 12 ounces of methamphetamine inside the car that he was driving on the night that he was arrested.  According to the Albuquerque Police Department tow sheet, the vehicle that ROBINSON was operating at the time of his arrest was a 2001 Pontiac with VIN# 1G2NF52T01M673863.

18. TFO Novicki and I asked where the methamphetamine was located.  ROBINSON stated that the methamphetamine was located inside of a blue Igloo cooler that was inside the rear passenger area of the vehicle.  I asked ROBINSON, as witnessed by TFO Novicki, if he would give verbal consent for us to search the vehicle that contained methamphetamine.  ROBINSON agreed, and gave verbal consent at that time.

19. I once again asked ROBINSON about the vehicle at the airport that he was looking at (SHAW's vehicle). ROBINSON stated that he drove his Pontiac Grand Am from California to New Mexico without any valid insurance or registration. ROBINSON stated that he became worried due to driving across the country and decided to stop at the Albuquerque International Airport where SHAW had a vehicle parked in the long term parking garage.

20. ROBINSON stated that if he liked the aforementioned vehicle, he was going to have SHAW send him the keys so that he could continue on to Mississippi in SHAW's vehicle. The vehicle of SHAW's that ROBINSON was looking at was a 1998 Acura bearing California license plate 7HYP749. According to the California Motor Vehicle Division, the Acura is registered as follows: Owner: Raul Gomez-Martinez; Address: 1020 N. Wilton, Los Angeles, California, 90038; Vehicle: 1998 Acura 2 door; Color: Dark Green; VIN 19UYA2259WL011043. ROBINSON stated that SHAW had purchased the Acura from Raul Gomez-Martinez.

21. ROBINSON did not give any indication regarding who was to receive the methamphetamine from him in Mississippi.

22. At approximately 1:15 pm, TFO Novicki and I concluded the debrief with ROBINSON at MDC and proceeded to the Acme Tow Yard located at 8705 Broadway SE, Albuquerque, New Mexico 87105.

23. At approximately 2:00 pm, we arrived to the tow yard and spoke with the manager. We asked to see a vehicle that the Albuquerque Aviation Police had towed to their location

on September 29, 2015.  The manager showed us where the vehicle was located on the property.  I proceeded to take photographs of the Grand Am.  The Igloo in question was located in the back seat.  TFO Novicki removed the cooler and opened it up.  The cooler contained miscellaneous soda cans as well as a Styrofoam food container with moldy food inside.  TFO Novicki emptied the cooler of its contents, and I proceeded to cut out the white inner shell of the cooler.

24. Once the inner cooler shell was removed, we could see a heat sealed plastic bag embedded in the foam insulation.  We took custody of the cooler and contents and returned to the DEA office.  I photographed the heat sealed bag as TFO Novicki pulled it out the foam insulation.

25. TFO Novicki observed the heat sealed bag to have blue tape on it, holding the corners down.  TFO Novicki cut open the bag and observed the outer bag to be inside another heat sealed bag with the corners taped down as well.  TFO Novicki again cut open the bag and observed a heat sealed bag containing a substance consistent with methamphetamine.  TFO Novicki utilized a pocket knife to cut a small hole in the bag to obtain a small piece of meth that could be field tested with a NIK test kit.  The test kit returned a positive reaction for the presence of methamphetamine.

26. On November 4, 2015, ROBINSON was extradited to Mississippi for his outstanding warrant.

27. Also on November 4, 2015, I received a telephone call from SA Penny, who advised that he interviewed ROBINSON early in the morning.  SA Penny advised that ROBINSON

was very cooperative while he was being interviewed.  SA Penny asked questions that pertained to the green Acura that was parked in the long term parking garage at the Albuquerque International Airport.   ROBINSON stated that in approximately June or July of 2015, SHAW traveled to Los Angeles, California to buy methamphetamine from William (Billy) WATSON.   Furthermore, ROBINSON stated that once SHAW arrived to buy the methamphetamine, he tried to buy it with cashier's checks.  ROBINSON stated that WATSON wanted nothing to do with the cashier's checks.  Additionally, ROBINSON said that SHAW proceeded to try to cash the cashier's check so that he could purchase the methamphetamine from WATSON.

28.  ROBINSON advised that during SHAW's same trip to Los Angeles, SHAW purchased a 1998 Acura to drive the methamphetamine back to Mississippi.  ROBINSON stated that SHAW left Los Angeles en route to Mississippi.  ROBINSON stated that SHAW was using a lot of methamphetamine during the trip.  Once SHAW arrived in Albuquerque, he was tired of driving.  ROBINSON said that SHAW parked the Acura at the Albuquerque International Airport and took an airline flight the rest of the way home.   As of today's date, the Acura is still parked in the long term parking section on the fourth level of the garage.

29. The facts set forth within are based on my personal participation in the investigation and upon the observation of other law enforcement personnel who related those facts to me.

## CONCLUSION

30. I believe, based on the aforementioned facts, the subject vehicle is being utilized by a

suspected narcotics trafficker in furtherance of drug trafficking activities from Los Angeles, California to Albuquerque, New Mexico to Gulfport, Mississippi. Based on my experience and the experience of other law enforcement officers with whom I have consulted, and the facts set forth above, I believe that probable cause exists to search the green Acura located at the long term parking garage at 2400 Sunport Blvd SE, Albuquerque New Mexico. I believe there is probable cause that this vehicle contains evidence, instrumentalities, and the fruits of violations of Title 21, United States Code, Section 841(a)(1), to wit, manufacturing, distributing and possessing with intent to distribute a controlled substance to commit the offense, as described in Attachment B. I further believe that the items listed on Attachment B, and incorporated into this affidavit by reference, may be found at the vehicle to be searched. I base this belief on the information set forth above, my training and experience, and the experience of the law enforcement officers with whom I have consulted.

Jason Franklin, Task Force Officer
Drug Enforcement Administration

This affidavit was approved by Assistant U.S. Attorney K. Brawley

Sworn to and subscribed before me this ___6th___ day of November, 2015

Chief United States Magistrate Judge
Karen B. Molzen

11

ATTACHMENT A

Green 1998, Acura

California license plate 7HYP749.

VIN # 19UYA2259WL011043

Registered to Gomez, Martinez, Raul; 1020 N Wilton, Los Angeles, California, 90038.



**Attachment B**

1.  Books, records, receipts, notes, ledgers, designated codes and other papers relating to the transportation, ordering, purchase and distribution of controlled substances;

2.  Papers, tickets, notes, schedules, receipts and other items relating to WATSON, William, ROBINSON, James, BATTLE, Davyonn, SHAW, Shad, and others not yet identified and their co-conspirators;

3.  Paraphernalia for manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, and inhaling unlawful controlled substances, including but not limited to scales, plastic bags, plastic wrap, packing tape, electrical tape, duct tape, and vacuum-sealing equipment.

4.  US Currency, checks, money orders, debit cards, gift cards, travelers checks.

5.  Any suspected controlled substances.